NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251038-U

NO. 4-25-1038

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 7, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| JEFFREY PRIMM, | ) | No. 16CF1820 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer J. Clifford, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Lannerd and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) The State proved defendant guilty of unlawful restraint beyond a reasonable doubt.
(2) Defendant failed to establish he was prejudiced by counsel's failure to seek the pretrial dismissal of two charged counts as barred by the statute of limitations.
(3) Defendant forfeited his claim he was denied a fair sentencing hearing.
(4) The trial court did not err in imposing extended-term sentences on defendant's convictions for aggravated domestic battery.

¶ 2     A jury found defendant, Jeffrey Primm, guilty of unlawful restraint (720 ILCS 5/10-3(a) (West 2012)), aggravated battery (*id.* § 12-3.05(c)), two counts of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2014)), and four counts of aggravated domestic battery (*id.* § 12-3.3(a-5)), and he was sentenced to an aggregate term of imprisonment totaling 40 years. Defendant appeals his convictions and sentences, arguing (1) the State failed to prove him guilty of unlawful restraint beyond a reasonable doubt, (2) counsel was ineffective for failing to seek the pretrial dismissal of two charged counts as barred by the statute of limitations, (3) the trial

court denied him a fair sentencing hearing by improperly relying on "unchallengeable suggestions of crimes against [his] children" in imposing its sentence, and (4) the court erred in imposing extended-term sentences on his convictions for aggravated domestic battery. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Charges

¶ 5          On July 13, 2016, defendant was indicted on, *inter alia*, one count each of aggravated criminal sexual assault (count I) (720 ILCS 5/11-1.30(a)(1) (West 2012)), unlawful restraint (count II) (*id.* § 10-3(a)), and aggravated battery (count III) (*id.* § 12-3.05(c)), and on four counts each of aggravated domestic battery (counts V, VII, VIII, and XIII) (720 ILCS 5/12-3.3(a), (a-5) (West 2014)) and domestic battery (counts IX, X, XI, and XV) (*id.* § 12-3.2(a)(1)). Each count named defendant's then-wife, L.P., as the alleged victim. In count II, the State alleged that between August 2013 and August 2015, defendant "committed the offense of UNLAWFUL RESTRAINT, in that [he] knowingly and without legal authority detained L.P. *** in that he forced her to sleep in a shed." In count IX, the State alleged that on December 9, 2014, defendant committed domestic battery, a Class A misdemeanor, in that he "kicked L.P., causing bruising." In count X, the State alleged defendant committed domestic battery on December 17, 2014, in that he "struck L.P. with a hose, causing bruising."

¶ 6          We note that in addition to the charges discussed above, defendant was also indicted on eight counts of aggravated battery of a child (counts IV, VI, XII, XIV, XVI, XVII, XVIII, and XIX) (*id.* § 12-3.05(b)(2)) involving two of his children, J.P. and S.P. However, because the trial court granted defendant's pretrial motion to sever those counts from the counts involving L.P., we discuss them only as is necessary to resolve the issues raised on appeal.

¶ 7                                    B. Proceedings in This Case and
                                    Winnebago County Case No. 15-CF-1858

¶ 8              On July 18, 2016, defendant pleaded guilty to aggravated domestic battery

(*id.* § 12-3.3(a)) in Winnebago County case No. 15-CF-1858. He was sentenced to 24 months of

probation. Defendant was not informed that the conviction could impact the sentencing ranges he

faced in this case.

¶ 9              On August 17, 2016, defendant filed a motion to withdraw his guilty plea in case

No. 15-CF-1858. The motion remained pending while proceedings were conducted in both cases

to determine defendant's fitness to stand trial.

¶ 10             On December 3, 2018, the trial court held a combined hearing in the two cases. At

the hearing, defendant asked the court if his aggravated domestic battery conviction in case

No. 15-CF-1858 "enhance[d]" the sentencing ranges he faced in this case. The court answered,

"It doesn't, actually." The court continued, "[The State] can't use that conviction as a way to

enhance it because you had not been convicted of that before the additional *** charges were

filed. So as you said, they were pending when you pled guilty in the 15 CF matter."

¶ 11             At a hearing conducted the next day, defense counsel informed the trial court that

defendant had yet to be "admonished of potential extended term eligibility" in this case. Counsel

elaborated, "[T]he problem *** is that the basis in part of our motion to vacate his guilty plea on

the 15 CF case is that he was provided ineffective assistance of counsel because his attorney ***

never told him that pleading guilty would subject him to extended term sentencing." The court

noted that "[r]ight now he is facing extended term" sentencing. It then stated, "I would rather

admonish him about the risk that he does face potentially, and then have it less down the road

than to have him think he doesn't face extended term sentencing when indeed he does. So I am

going to admonish him on the various counts." The court admonished defendant that the

sentencing range for aggravated domestic battery was "3 to 14 years, not 3 to 7 years."

¶ 12        After the trial court admonished defendant, defense counsel informed the court that the parties had reached a negotiated plea agreement to resolve the pending matters in both cases. Defendant agreed to plead guilty to counts IV, VII, and VIII in this case and withdraw his pending Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) motion in case No. 15-CF-1858. In exchange, the State agreed to recommend a sentence of imprisonment totaling 16 years in this case and recommend that the court order defendant's probation "neutrally discharged" in case No. 15-CF-1858. Before accepting defendant's guilty plea, the court admonished him with respect to the aggravated domestic battery charges, "[A]s you stand here today, you're extended term eligible on that which means you face anywhere from 3 to 14 years in prison." Defendant stated that he understood the applicable sentencing ranges. The court accepted defendant's guilty plea and ordered that "all motions filed under Rule 604(d)" be withdrawn in case No. 15-CF-1858.

¶ 13        C. Defendant's Motion to Withdraw His Guilty Plea in This Case

¶ 14        On December 26, 2018, defendant filed a *pro se* motion to withdraw his guilty plea. He alleged that he "was not aware that the charges could be ran [*sic*] concurrent[ly] and was told they were consecutive." The trial court ultimately granted defendant's motion to withdraw his guilty plea after a hearing. The court found that it had "represented he was mandatory consecutive on all the charges, and that was wrong."

¶ 15        D. The Jury Trial

¶ 16        Defendant's jury trial on the charges involving L.P.—counts I-III, V, VII-XI, XIII, and XV—began on January 2, 2024, and concluded on January 4, 2024. We discuss only the evidence relevant to counts II, IX, and X. As indicated above, count II charged defendant

with unlawful restraint, while both counts IX and X charged him with domestic battery.

¶ 17                                    1. *The State's Case-In-Chief*

¶ 18         L.P. testified that she was 52 years old at the time of trial. She married defendant when she was 32 years old, and they shared three children together (born in 2003, 2005, and 2007). They were no longer married at the time of trial. L.P. disclosed defendant's alleged abuse to law enforcement in August 2015.

¶ 19         L.P. testified that between August 2013 and August 2015, defendant "directed [her] to sleep in the shed" located in their backyard "[d]ozens" of times. Defendant made her sleep there naked, without any bedding or blankets, and this would usually occur in the winter "because it was more of a punishment." When asked if she could "just come back into the house" after sleeping in the shed, L.P. testified that she could not. She then elaborated as follows:

> "So I would be sent out to the shed and then I couldn't come back into the house until he came out to the shed and told me that I could come back into the house. And he would lock the doors so that I couldn't get into the house until he would come out anyway and tell me that I could come back into the house. And that would be in the morning, typically right before the kids had to be woke up [*sic*]."

¶ 20         L.P. testified that there was incident on December 9, 2014, where defendant kicked her legs while he was wearing heavy boots. She testified, "Every winter he would wear big construction boots, like big soles, and kick me all of the time with those boots, and would leave marks everywhere on my legs, on my butt, on my back." L.P. took pictures of the bruising on her legs caused by defendant kicking her on December 9, 2014. The photos, marked as exhibit Nos. 22 to 24, were admitted into evidence and published to the jury.

¶ 21        L.P. testified that on December 17, 2014, defendant "whipped [her] with a car hose, like a clear braided hose, plastic hose." L.P. testified that he "whipped" her "[a]ll over" her body. On the same date, L.P. took a picture of the hose and of her "butt being bruised" "from being whipped with th[e] hose." The photos, marked as exhibit Nos. 25 and 26, were admitted into evidence and published to the jury.

¶ 22        On cross-examination, L.P. testified that the shed she was "directed" to sleep in had three doors and two windows. Although defendant would lock the doors to the house when he made her sleep in the shed, he would not lock any of the doors to the shed.

¶ 23        On redirect, the prosecutor asked L.P. if she felt free to leave the shed. L.P. answered, "No, because my kids were inside my house. I wasn't going to go anywhere where I'd be away from my kids and really didn't have anywhere to go, and a lot of times I was naked."

¶ 24                    2. *Defendant's Motion for a Directed Verdict*

¶ 25        Defendant moved for a directed verdict on all counts at the conclusion of the State's case-in-chief. In arguing for a directed verdict on count II, defendant asserted, "It is not a savory thing to tell your wife to sleep in the shed[,] but he didn't lock her in. She could have left." Defendant did not make any specific argument concerning counts IX or X.

¶ 26        While addressing defendant's motion, the trial court *sua sponte* asked the State to explain why counts IX and X were "not subject to dismissal for being beyond the [18-month] limitation period." The State conceded that "it does appear that it is a couple of weeks *** past the statute of limitations." The court noted that defendant's failure to raise the issue was "technically a waiver." Nonetheless, on its own motion, it dismissed counts IX and X "as being a violation of [the] statute of limitations."

¶ 27        Ultimately, the trial court denied defendant's motion for a directed verdict on the

remaining counts. In rejecting defendant's argument concerning count II, the court stated that "the law does not require somebody to be locked into a shed." The court continued, "She could have gone somewhere else for help[,] but she explained why she didn't try to go out and try to leave because if she got caught, the punishment would be a lot worse."

¶ 28                                  3. *Defendant's Case-In-Chief*

¶ 29          Defendant called L.P. to testify during his case-in-chief. L.P. testified that she and defendant owned three vehicles during the time period in question, and the vehicles were parked at their house on the nights she was directed to sleep in the shed. Defendant asked L.P., "Is there any reason why *** you didn't make a copy of one of the car keys so you could drive away and not have to walk partially clothed somewhere?" L.P. testified:

> "I was fearful for my life. I had been threatened. Threatened that if I did anything that put him between his kids that I would be killed a long slow death or anybody else. So the last thing that I wanted to do was to do anything that could put me further away from my kids."

Defendant then asked, "But simply driving away to get help or go somewhere warm for the night doesn't mean you're always and forever leaving your kids?" L.P. answered as follows:

> "No, but it does mean he could have checked on me. He could have woke up [*sic*], which he did frequently, checked on me, saw that I wasn't there. I could have experienced then the next morning a more severe punishment which would mean I wouldn't have been able to make it to work. I was the only one making money. *** So it was not—and then it would have changed the course, right, but for what end? Go to a shelter to lose everything because I'm not at work to just come back out to not be safe but to also have lost everything. When I knew at

least my kids were going to school everyday [*sic*] where they would be safe."

¶ 30                              4. *Final Instruction Conference*

¶ 31         During the final instruction conference, the parties and the trial court agreed that

exhibit Nos. 22 to 26 would "not go back" to the jurors because they related to counts IX and X,

which were "not in existence anymore." The State amended its jury instructions to show that

defendant was charged with two counts of domestic battery rather than four. However, nothing in

the record indicates that the jurors were explicitly informed that the two charges had been

dismissed, nor is there anything to show they were instructed on how to treat the testimony they

had heard in relation to the dismissed charges.

¶ 32                                   5. *Jury's Verdicts*

¶ 33         The jury ultimately found defendant not guilty of count I and guilty of each

remaining count, including unlawful restraint as charged in count II.

¶ 34                      E. Sentencing and Postsentencing Proceedings

¶ 35         On March 1, 2024, the trial court conducted a sentencing hearing. The State called

Robert Wiest and L.P. to testify at the hearing. Wiest testified that on September 3, 2015, he was

employed as a police officer and, on that date, he "observe[d] several victim sensitive

interviews" conducted with defendant's three children. Defendant objected to the admission of

video recordings of the children's interviews on the basis the recordings related to "[e]vidence

regarding pending charges." The court overruled defendant's objection.

¶ 36         L.P. testified that her children prepared "victim impact statements" describing

"various incidents of *** defendant harming them in various ways." The children's statements

were admitted into evidence over defendant's objection.

¶ 37         In imposing its sentence, the trial court found defendant was extended-term

eligible on the aggravated domestic battery convictions based on his aggravated domestic battery conviction in case No. 15-CF-1858. The court also relied on the children's "victim sensitive interviews" and "victim impact statements" in imposing its sentence. Ultimately, the court sentenced defendant to four consecutive 10-year sentences for aggravated domestic battery. The court also sentenced him to 3 years in prison for unlawful restraint and 5 years for aggravated battery, with those sentences to be served concurrently with the aggravated domestic battery sentences, for an aggregate sentence of imprisonment totaling 40 years.

¶ 38        Defendant filed a motion to reconsider his sentence. In relevant part, he argued the trial court erred in imposing extended-term sentences on the aggravated domestic battery convictions. He did not include any claim that the court erred in relying on evidence pertaining to the severed child-related offenses in imposing its sentence. The court denied defendant's motion after a hearing.

¶ 39        This appeal followed.

¶ 40                          II. ANALYSIS

¶ 41        On appeal, defendant argues (1) the State failed to prove him guilty of unlawful restraint beyond a reasonable doubt, (2) counsel was ineffective for not seeking the pretrial dismissal of counts IX and X, (3) the trial court deprived him of a fair sentencing hearing by relying on evidence of the severed child-related counts in imposing its sentence, and (4) the court erred in imposing extended-term sentences on his aggravated domestic battery convictions.

¶ 42                     A. Sufficiency of the Evidence

¶ 43        Defendant first argues, "The State failed to prove that [he] was guilty of unlawful restraint beyond a reasonable doubt when there was no evidence that he detained or confined L.P. in any way." More specifically, he contends the State failed to prove he "detained" L.P. in

- 9 -

the shed because the "evidence established that the shed was unlocked, that L.P. was not physically restrained, and that there was no threat specifically tied to leaving the shed." The State argues the evidence was sufficient to prove defendant detained L.P. "through a threat of violence rather than a lock." In response, defendant acknowledges "that a threat can detain a person where the threat is the mechanism that restricts movement," but he maintains "the State did not prove a threat that caused L.P. to remain in the shed."

¶ 44 "When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64. "Under this standard a reviewing court does not retry the defendant, and the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *People v. Wright*, 2017 IL 119561, ¶ 70. "[T]he trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 2020 IL 124112, ¶ 70. On review, all reasonable inferences to be drawn from the evidence must be drawn in favor of the State, and the trier of fact's credibility determinations must be afforded great weight. *People v. Swenson*, 2020 IL 124688, ¶¶ 35-36. "A criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Jackson*, 2020 IL 124112, ¶ 64.

¶ 45 "A person commits the offense of unlawful restraint when he or she knowingly without legal authority detains another." 720 ILCS 5/10-3(a) (West 2012). In count II, the State

alleged defendant "detained" L.P. "in that he forced her to sleep in a shed." Our supreme court has stated that "detention," as used in the unlawful restraint statute, "is commonly understood to mean causing a restriction of another's freedom to move about." *People v. Wisslead*, 108 Ill. 2d 389, 398 (1985); see, *e.g.*, *People v. Bowen*, 241 Ill. App. 3d 608, 627-28 (1993) ("The gist of unlawful restraint is the detention of a person by some conduct which prevents him from moving from one place to another."). "[U]nlawful restraint may be effected by words alone, by acts alone, or both." *Marcus v. Liebman*, 59 Ill. App. 3d 337, 339 (1978). "Actual or physical force is not a necessary element of unlawful restraint as long as an individual's freedom of locomotion is impaired." *Bowen*, 241 Ill. App. 3d at 628. "However, the [victim's] submission must be to a threatened and reasonably apprehended force." *Marcus*, 59 Ill. App. 3d at 339.

¶ 46        Here, as indicated, defendant argues that "the State did not prove a threat that caused L.P. to remain in the shed." We disagree. L.P. testified that despite the shed doors being unlocked, she did not feel free to leave the shed when "directed" to sleep there by defendant because she "had been threatened" and she "was fearful for [her] life." L.P. further testified that she "could have experienced *** a more severe punishment" if she had left the shed without defendant's permission. As mentioned, L.P. testified she suffered substantial physical abuse, such as being kicked by defendant and whipped by him with a plastic hose.

¶ 47        Viewing this evidence in the light most favorable to the State leads to the natural inference that when defendant "directed" L.P. to sleep in the shed, there was an inherent threat that he would harm her physically should she disobey his command and leave the shed without his permission. See *Jackson*, 2020 IL 124112, ¶ 70; *Swenson*, 2020 IL 124688, ¶¶ 35-36. Moreover, based on the fact that the jury found defendant guilty of committing numerous violent offenses against L.P. during the relevant time period, the evidence was also sufficient to prove

- 11 -

L.P. reasonably believed that defendant would follow through with the perceived threat to physically harm her if she left the shed without his permission. See *Marcus*, 59 Ill. App. 3d at 339 (stating that a person may be detained by submitting "to a threatened and reasonably apprehended force").

¶ 48 Defendant argues "[t]he State cannot prove detention in the shed by proving exclusion from the house." He suggests that just because he locked the doors to the house does not warrant the conclusion L.P. was detained. However, L.P. was not just excluded from the house, she was "sent out to the shed." L.P. testified defendant sent her to the shed as punishment, "and then [she] couldn't come back into the house until he came out to the shed and told [her] that [she] could come back into the house." He did this to punish L.P. According to L.P., "I would be sent out there naked and it would be cold." The record refutes defendant's contention that the evidence "showed only that [he] prevented L.P.'s entry into the house."

¶ 49 Accordingly, we reject defendant's argument that "the State did not prove a threat that caused L.P. to remain in the shed," and we find the evidence was sufficient to prove him guilty of unlawful restraint beyond a reasonable doubt.

¶ 50                          B. Ineffective Assistance of Counsel

¶ 51 Next, defendant argues counsel rendered ineffective assistance by not seeking the pretrial dismissal of counts IX and X. He contends he was prejudiced by counsel's deficient performance because "it allowed the State to inject irrelevant, inflammatory, propensity-laden evidence into the trial without the gatekeeping that would normally accompany other-acts evidence, undermining confidence in the verdict." The State concedes that counsel performed deficiently, but it argues defendant "cannot show any reasonable probability that he would have been acquitted" of the remaining charges, given that the complained-of evidence "would have

- 12 -

been fully admissible" under section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4 (West 2024)). In response, defendant asserts the following:

> "The State's formulation of prejudice—that [he] 'cannot show any reasonable probability that he would have been acquitted'—states the ultimate question too narrowly for this case. [Citation.] The issue is whether confidence in the verdicts is undermined by counsel's failure to prevent the jury from hearing barred-count proof as part of the charged case."

¶ 52 Claims of ineffective assistance of counsel are generally analyzed under the familiar two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Under *Strickland*, a defendant must establish that counsel's performance was deficient and that the deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 687. More specifically, "a defendant must demonstrate that (1) counsel's performance was objectively unreasonable compared to prevailing professional standards and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Cherry*, 2016 IL 118728, ¶ 30 (citing *Strickland*, 466 U.S. at 688, 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. We review claims of ineffective assistance of counsel *de novo*. See, *e.g.*, *People v. Synowiecki*, 2023 IL App (4th) 220834, ¶ 25.

¶ 53 Here, we agree with the parties that counsel performed deficiently by not seeking the pretrial dismissal of counts IX and X, but we nonetheless reject defendant's ineffectiveness

claim because he has failed to establish prejudice. Defendant's argument concerning prejudice consists of repeating some variation of the following statement: "In the context of this multiple domestic-battery trial, evidence that [he] repeatedly kicked L.P. with construction boots and whipped her with a hose—accompanied by published photographs of bruising to intimate areas—was uniquely likely to influence the jury's assessment of all remaining counts." See, *e.g.*, *People v. Delton*, 227 Ill. 2d 247, 258 (2008) (stating that conclusory allegations are insufficient to state even the gist of an ineffectiveness claim). Defendant seems to suggest that prejudice was inherent in this case, citing the legal proposition that "[t]he erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal." *People v. Lindgren*, 79 Ill. 2d 129, 140 (1980). However, *Lindgren* does not stand for the proposition that the erroneous admission of other-crimes evidence automatically entitles a defendant to a new trial. Instead, *Lindgren* clearly states that a conviction will be upheld "if the properly admitted evidence is so overwhelming that no fair-minded jury could have voted for acquittal." *Id.* at 141; see *People v. Nieves*, 193 Ill. 2d 513, 530-31 (2000) (finding the erroneous admission of other-crimes evidence was harmless in light of "the substantial evidence of [the] defendant's guilt"). To the extent defendant attempts to argue that prejudice was inherent in the error, we reject his argument.

¶ 54　　　　As stated, the State argues the complained-of evidence that defendant kicked L.P. with construction boots and whipped her with a plastic hose was otherwise admissible under section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2024)). Under section 115-7.4, where, as here, a "defendant is accused of an offense of domestic violence ***, evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and [the evidence] may be considered for its bearing on any matter to which it is relevant." *Id.* § 115-7.4(a).

"[B]efore evidence of the defendant's commission of another offense or offenses of domestic violence may be admitted, the court applies a test, weighing the probative value of the evidence against undue prejudice to the defendant." *People v. Heintz*, 2026 IL 131340, ¶ 38; see *People v. Dabbs*, 239 Ill. 2d 277, 291 (2010) ("[T]he plain meaning of section 115-7.4 of the Code is that evidence of a defendant's commission of other acts of domestic violence may be admitted *** so long as the evidence is relevant and its probative value is not substantially outweighed by the risk of undue prejudice."); see also 725 ILCS 5/115-7.4(b)(1)-(3) (West 2024) (listing the factors courts may consider in weighing the probative value of the evidence against undue prejudice). Defendant counters the State's argument by asserting that section 115-7.4 does not allow for the "automatic, unlimited admissibility" of other-crimes evidence but instead preserves "the trial court's authority to exclude evidence that is irrelevant or whose prejudicial effect substantially outweighs its probative value." However, defendant fails to argue either basis for exclusion under section 115-7.4 would have applied here.

¶ 55        Further, even if we were to assume the evidence presented on counts IX and X would have been inadmissible under section 115-7.4—something defendant has failed to establish—he still cannot establish prejudice under *Strickland* without first showing there was not "substantial evidence of [his] guilt" on the remaining counts. *Nieves*, 193 Ill. 2d at 530; see *People v. Smith*, 341 Ill. App. 3d 530, 544 (2003) (finding the defendant could not establish prejudice because the evidence of his guilt was overwhelming). However, defendant never actually discusses the evidence that was properly admitted on the remaining counts, nor does he attempt to explain why, in light of that evidence, verdicts of not guilty would have been reasonable had the jurors not heard the complained-of evidence. See *Strickland*, 466 U.S. at 695. In response to the State highlighting the evidence of his guilt on the remaining counts and the

fact that the complained-of evidence would have likely been admissible under section 115-7.4—even to show his propensity to commit domestic battery—defendant merely states, "*Strickland* prejudice does not require [him] to show that the State had no other evidence. [Citation.] It requires only a reasonable probability sufficient to undermine confidence in the outcome." But, without a discussion of the evidence on the remaining counts, defendant cannot establish that there is, in fact, a reasonable probability sufficient to undermine confidence in his guilt. See, *e.g.*, *People v. Patterson*, 2014 IL 115102, ¶ 81 ("Satisfying the prejudice prong necessitates a showing of actual prejudice."). Accordingly, we find he has failed to establish he was prejudiced by counsel's deficient performance.

¶ 56                              C. Fair Sentencing Hearing

¶ 57          Next, defendant argues he "was denied a fair sentencing hearing when the court relied on unchallengeable suggestions of crimes against the children *** through victim-sensitive interviews and improper 'victim impact' letters, despite acknowledging that the material was unconfrontable [*sic*] hearsay and that the defense was handicapped in contesting it." The State argues, in part, that defendant forfeited the instant claim by failing to raise it in his motion to reconsider sentence. In response to the State's forfeiture argument, defendant asserts the following: "To the extent this Court finds [counsel's objection at the sentencing hearing] inadequate to preserve the issue, review remains appropriate under sentencing plain error because the court expressly relied on improper aggravation. [Citations.] Alternatively, counsel's failure to preserve a meritorious sentencing claim would constitute ineffective assistance."

¶ 58          Initially, we note that we agree with the State that defendant forfeited the instant claim. Even assuming, *arguendo*, defendant adequately objected at the sentencing hearing, he nonetheless failed to raise the issue in his motion to reconsider sentence. See, *e.g.*, *People v.*

*Hillier*, 237 Ill. 2d 539, 544 (2010) ("[T]o preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."); see also 730 ILCS 5/5-4.5-50(d) (West 2024) ("A defendant's challenge to *** any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court."). Further, we find it unnecessary to reach the merits of defendant's claim because, as explained below, he has failed to establish he is entitled to a review of the claim as either plain error or as an alternative claim of ineffective assistance of counsel.

¶ 59        In *People v. Nieves*, 192 Ill. 2d 487, 502 (2000), the defendant argued on appeal that he was denied "a fair death penalty sentencing hearing when the prosecutor was allowed to introduce hearsay evidence." Although the defendant had forfeited his claim by failing to object at the sentencing hearing, on appeal, he requested the supreme court "review the issue as plain error," and he "also raise[d] th[e] issue as an ineffective assistance of counsel claim." *Id.* at 502-03. The supreme court held the defendant forfeited plain-error review because his "plain error argument consists of a single sentence asking us to employ the plain error rule because the right to a fair death penalty sentencing hearing is a fundamental right." *Id.* at 503. It further stated, "He neither argues that the evidence was closely balanced nor explains why the error is so severe that it must be remedied to preserve the integrity of the judicial process." *Id.* The supreme court also found the defendant forfeited his ineffective-assistance argument on appeal because the argument consisted of a "single statement and a citation to *Strickland*." *Id.* The supreme court further stated, "Defendant explains neither how his attorney's actions fell below an objective standard of reasonableness nor how a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *Id.*

¶ 60        Here, with respect to defendant's plain-error argument, he, like the defendant in

*Nieves*, "neither argues that the evidence was closely balanced nor explains why the error is so severe that it must be remedied to preserve the integrity of the judicial process." *Id.* In other words, he has forfeited plain-error review on appeal. See, *e.g.*, *Hillier*, 237 Ill. 2d at 545-56 ("[W]hen a defendant fails to present an argument on how either of the two prongs of the plain-error doctrine is satisfied, he forfeits plain-error review."). As for defendant's alternative claim of ineffective assistance of counsel, he again, like the defendant in *Nieves*, "explains neither how his attorney's actions fell below an objective standard of reasonableness nor how a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *Nieves*, 192 Ill. 2d at 503; see *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (stating that the "defendant, as the appellant, bears the burden of persuasion as to its claims of error"). Accordingly, we find defendant has failed to establish he is entitled to appellate review of the instant, forfeited claim, and "the result is that his procedural default must be honored." *Jackson*, 2020 IL 124112, ¶ 81.

¶ 61                          D. Imposition of Extended-Term Sentences

¶ 62           Lastly, defendant argues, "The trial court erred in sentencing [him] to extended-term Class 2 felony sentences after affirmatively advising him that the 15 CF 1858 conviction could not be used to enhance this sentence—an admonishment that [he] relied upon when he withdrew his pending plea-withdrawal litigation in 15 CF 1858." According to defendant, "Due process and fundamental fairness do not permit the court to impose the very enhancement it told [him] was unavailable after that assurance induced him to abandon his plea-withdrawal litigation." Alternatively, defendant contends counsel was ineffective because counsel "allowed (and affirmatively conceded) use of 15 CF 1858 as the predicate for extended-term exposure despite the court's earlier assurance and the induced withdrawal of the 15 CF 1858 challenge."

The State argues, in part, that the "record thoroughly rebuts defendant's claim of inducement that was predicated on a single erroneous remark from the [court]."

¶ 63    We find it unnecessary to reach the merits of defendant's alternative claims because, as noted by the State, they are clearly contradicted by the record. Specifically, both claims are premised on defendant's assertion that the trial court "promised [him] that it could not use 15 CF 1858 to expose [him] to an extended term in [this case], which induced him to abandon his [Rule] 604(d) motion in the prior case." Defendant's assertion is clearly contradicted by the record. At a hearing on December 3, 2018, the court erroneously informed defendant that his aggravated domestic battery conviction in case No. 15-CF-1858 could not be used to "enhance" the sentences he faced in this case "because [he] had not been convicted of that before the additional *** charges were filed." However, at a hearing the next day, the court corrected its mistake by admonishing him, "[A]s you stand here today, you're extended term eligible." The court told him multiple times that the sentencing range for aggravated domestic battery was "3 to 14 years, not 3 to 7 years." Before accepting defendant's guilty plea, the court admonished him one final time, "[Y]ou face anywhere from 3 to 14 years in prison." Defendant stated that he understood he was facing 3 to 14 years in prison for aggravated domestic battery. Defendant acknowledged he faced extended-term sentencing and knowingly entered into the fully negotiated plea agreement in this case. The court's prior faulty admonishment was remedied and could no longer serve as a basis for defendant to claim error. Accordingly, because defendant's contention that the court's "plea admonishment error" "induced him to abandon his plea-withdrawal litigation" is clearly contradicted by the record, we reject his alternative arguments.

¶ 64                            III. CONCLUSION

¶ 65    For the reasons stated, we affirm the trial court's judgment.

¶ 66         Affirmed.